Appeal of UNITED STATES of America (By the ATTORNEY GENERAL).

UNITED STATES of America (By the OFFICE OF INDEPENDENT COUNSEL), Plaintiff–Appellee,

v.

Joseph F. FERNANDEZ, Defendant–Appellee.

No. 89–5804.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 23, 1989.

Decided Sept. 29, 1989.

See also, D.C., 715 F.Supp. 145.

Edward S.G. Dennis, Jr., Asst. Atty. Gen., Philadelphia, Pa., John F. De Pue, Washington, D.C. (Ronald K. Noble, Deputy Asst. Atty. Gen., James S. Reynolds, William C. Brown, Attys., Criminal Div., U.S. Dept. of Justice, Washington, D.C., on brief), for appellant.

Gerard E. Lynch, New York City (Lawrence E. Walsh, Independent Counsel; Laurence Shtasel, Geoffrey S. Stewart, Geoffrey S. Berman; John Q. Barrett, Associate Counsel, Office of Independent Counsel, Washington, D.C. on brief), for plaintiff-appellee U.S.

Thomas E. Wilson (Mary Beth Sullivan, Susan C. Benner, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C. on brief), for defendant-appellee Fernandez.

Before CHAPMAN, WILKINSON, and WILKINS, Circuit Judges.

WILKINSON, Circuit Judge:

In this case we must reconcile two statutes that make no reference to one another: The Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. § 1 *et seq.* (1982), and the independent counsel provisions of the Ethics in Government Act, 28 U.S.C.A. § 591 *et seq.* (1989 Supp.). The Attorney General contests certain orders of the district court which authorized the disclosure of classified information in a criminal case being prosecuted by an independent counsel appointed pursuant to the Ethics in Government Act. Rather than file an affidavit under CIPA which would absolutely prohibit the disclosure of the information in question, the Attorney General seeks to take an interlocutory appeal under the statute from the district court's rejection of substituted versions of the classified materials. Independent counsel opposes this appeal. He argues that in

cases within his prosecutorial jurisdiction, the Ethics in Government Act grants him the sole authority to exercise the right to appeal under section 7 of CIPA the rulings rejecting the substitution proposals. We agree with independent counsel and direct that this appeal be dismissed.

## I.

### A.

Congress enacted the Classified Information Procedures Act in 1980 to confront the problem of a criminal defendant who "threatens to reveal classified information during the course of his trial in the hope of forcing the government to drop the criminal charge against him." *United States v. Smith*, 780 F.2d 1102, 1105 (4th Cir.1985). CIPA addresses this problem by establishing procedures for making decisions about the use of such information. Section 5(a) of the Act requires a criminal defendant to notify the court and the prosecutor about any classified material he expects to disclose at trial. Once the defendant gives notice, the United States may request a hearing at which the court shall determine the "use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C.App. § 6(a). The court must hold this hearing *in camera* if the Attorney General certifies that a public

proceeding may disclose classified information. *Id.*

If the court authorizes disclosure of classified information, the United States may move that the court instead accept either a substitute admission of relevant facts or a substitute summary of the information. 18 U.S.C.App. § 6(c)(1).[1] The court must grant the motion if the government's substitutions provide the defendant with "substantially the same ability to make his defense" as would complete disclosure. *Id.* If the court denies the section 6(c)(1) motion, the Attorney General can prepare an affidavit barring the defendant from disclosing the classified information. 18 U.S.C.App. § 6(e)(1).[2] The court then must fashion an appropriate remedy, ranging from dismissal of the entire indictment to preclusion of certain testimony. 18 U.S.C. App. § 6(e)(2). Section 7(a) authorizes the United States to take an interlocutory appeal, before or during trial, from an adverse district court order concerning disclosure of classified information.[3]

### B.

In most cases involving CIPA issues, the Attorney General is in charge of the prosecution. The instant case, however, is being prosecuted by independent counsel appointed pursuant to the Ethics in Government

---

**1.** Section 6(c)(1) provides:

Upon any determination by the court authorizing the disclosure of specific classified information under the procedures established by this section, the United States may move that, in lieu of the disclosure of such specific classified information, the court order—
(A) the substitution for such classified information of a statement admitting relevant facts that the specific classified information would tend to prove; or
(B) the substitution for such classified information of a summary of the specific classified information.
The court shall grant such a motion of the United States if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information. The court shall hold a hearing on any motion under this section. Any such hearing shall be held in camera at the request of the Attorney General.

**2.** Section 6(e)(1) provides:

Whenever the court denies a motion by the United States that it issue an order under subsection (c) and the United States files with the court an affidavit of the Attorney General objecting to disclosure of the classified information at issue, the court shall order that the defendant not disclose or cause the disclosure of such information.

**3.** Section 7(a) provides:

An interlocutory appeal by the United States taken before or after the defendant has been placed in jeopardy shall lie to a court of appeals from a decision or order of a district court in a criminal case authorizing the disclosure of classified information, imposing sanctions for nondisclosure of classified information, or refusing a protective order sought by the United States to prevent the disclosure of classified information.

Act.[4] The Ethics in Government Act provides for the appointment of independent counsel to investigate and prosecute high-ranking Executive Branch officials. In order to avoid the appearance of partiality that might result if the Department of Justice were prosecutor, the Act transfers to independent counsel "full power and independent authority to exercise all investigative and prosecutorial functions and powers" of the Department of Justice and the Attorney General. 28 U.S.C.A. § 594(a). Here the prosecution is plainly one within the statutory authority of the special prosecutor. However, the Department of Justice has been working in concert both with national intelligence agencies and with independent counsel to ensure that national security secrets are safeguarded. Independent counsel has consulted the Attorney General concerning the use and potential disclosure of classified information in this case, and the Attorney General has participated in framing both the initial charges and the substitution proposals.

The events leading to this appeal began on April 24, 1989, when Joseph F. Fernandez, a former CIA service officer, was indicted on two counts of giving false official statements in violation of 18 U.S.C. § 1001 and two counts of obstructing proceedings in violation of 18 U.S.C. § 1505. The charges grew out of statements made by Fernandez to two investigative bodies examining the facts surrounding the "Iran–Contra" affair. Following his indictment, Fernandez gave notice under section 5(a) of CIPA that he intended to introduce classified information during trial. After a hearing, the district court found some of the classified items relevant to his defense. Independent counsel then filed several motions under section 6(c)(1) of CIPA proposing to substitute unclassified summaries for the classified information Fernandez

intended to use. The district court rejected many of the substitution proposals and set trial for July 24, 1989.

Prior to trial, independent counsel asked the Department of Justice to file an affidavit under section 6(e)(1) of CIPA to block disclosure of some of the classified information. The Department of Justice refused, and instead urged independent counsel to file an interlocutory appeal under section 7(a) of the statute from the district court's adverse rulings on the substitution proposals. Independent counsel declined the invitation, choosing to delay appeal until after final action by the Attorney General and any subsequent sanctions by the district court.

On the morning of trial, the Department of Justice sought a stay of the trial and filed a notice of appeal under section 7(a) challenging the district court's rejection of the proposed substitutions. The district court denied the Attorney General's motion for a stay. The same afternoon, this court stayed the trial pending consideration of this appeal.

## II.

We must address at the outset our jurisdiction to hear this appeal. Section 7(a) of CIPA vests the right to bring an interlocutory appeal from adverse CIPA orders in "the United States." The Attorney General claims that because the right to appeal under CIPA is an inextricable part of his duty to protect national security, he may bring this appeal even though he is not prosecuting the case. Independent counsel counters that the Attorney General lacks standing to appeal here because the Ethics in Government Act transfers to independent counsel all of the Attorney General's prosecutorial authority, including the right

**4.** A Special Division of the United States Court of Appeals for the District of Columbia appointed independent counsel in this case on December 19, 1986, under the Ethics in Government Act. Although the Ethics in Government Act subsequently expired, the Independent Counsel Reauthorization Act of 1987, Pub.L. 100–191, 101 Stat. 1293, *codified at* 28 U.S.C.A. §§ 591–599 (Supp.1989), explicitly states that the provi-

sions of the Ethics in Government Act at issue here should continue to apply to previously initiated independent counsel proceedings, like this one, that were pending on December 15, 1987. The Independent Counsel Reauthorization Act of 1987 reenacted, without substantive amendment, all provisions of the Ethics in Government Act that are relevant to this appeal.

to bring an interlocutory appeal under section 7 of CIPA.

Resolution of this controversy requires us to construe both CIPA and the Ethics in Government Act, neither of which refers to the other. Several principles guide us in this endeavor. First, we must try to give full effect to both statutes. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). In giving full effect to both statutes, we must construe them as harmoniously as possible. 2A *C. Sands, Sutherland Statutory Construction* § 53.01, at 549–50 (4th Ed.1984 Revision). Finally, in harmonizing the two statutes, we must be sensitive to the plain meaning of the terms employed. *See, e.g., Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).

The charter of authority for independent counsel is an example of emphatic statutory draftsmanship. Its language is broad, unequivocal, and, in our view, dispositive:

Notwithstanding any other provision of law, an independent counsel appointed under this chapter shall have, with respect to all matters in such independent counsel's prosecutorial jurisdiction established under this chapter, full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice, the Attorney General, and any other officer or employee of the Department of Justice, except that the Attorney General shall exercise direction or control as to [the authorization of wiretaps].

28 U.S.C.A. § 594(a). This passage effects a sweeping transfer of prosecutorial and investigative authority from the Attorney General to independent counsel. In "all" matters within his jurisdiction, the independent counsel has "full" power to exercise "all" prosecutorial functions of the Department of Justice and the Attorney General.

Congress employed such broad and unambiguous language to ensure the special prosecutor's independence: "The whole purpose of [the independent counsel provisions of the Act] is defeated if a special prosecutor is not independent and does not have clear authority to conduct a criminal investigation and prosecution without interference, supervision or control by the Department of Justice." S.Rep. No. 170, 95th Cong., 2d Sess. 66, *reprinted in* 1978 *U.S. Code Cong. & Ad.News* 4216, 4282. To further guarantee this independence, the legislative history states that the already unambiguous language in section 594(a) "should be interpreted broadly." *Id.* at 67, 1978 *U.S. Code Cong. & Ad.News* at 4283.

In addition, the prosecutorial powers conferred by section 594(a) apply "notwithstanding any other provision of law." This proviso naturally means that the conferral of prosecutorial powers should not be limited by other statutes.[5] Finally, section 594(a) itself contains "[t]he one and only exception to the total independence granted" to independent counsel under the Act, S.Rep. No. 170, 95th Cong., 2d Sess. 67, *reprinted in* 1978 *U.S. Code Cong. & Ad. News* 4216, 4283, namely, wiretap authorization. Congress has thus decided that no other exceptions exist to independent counsel's otherwise plenary grant of prosecutorial authority.

Given Congress' command that "[n]otwithstanding any other provision of law" independent counsel exercises "all ... prosecutorial functions," we must dismiss the Attorney General's appeal if the power to appeal under section 7 of CIPA is a prosecutorial function. Several factors lead us to conclude that it is. First, and most crucially, the Ethics in Government Act states that the power to appeal is prosecutorial. The Act includes within the prosecutorial functions granted to independent counsel the power to "appeal[ ] any decision of a court in any case or proceeding"

---

**5.** Although the Ethics in Government Act was enacted prior to CIPA, it was subsequently reenacted, with the same "notwithstanding any other provision of law" proviso, after CIPA. Pub.L. 97–409, 96 Stat. 2039; Pub.L. 100–191, 101 Stat. 1293.

within his jurisdiction. 28 U.S.C. § 594(a)(3). *See also Morrison v. Olson*, — U.S. ——, 108 S.Ct. 2597, 2604, 101 L.Ed.2d 569 (1988) (recognizing that the "functions of the independent counsel include ... appealing any decision in any case in which the counsel participates in an official capacity"). As with other prosecutorial powers granted by the Ethics in Government Act, Congress intended the special prosecutor to exercise the power to appeal with independence from the Department of Justice. S.Rep. No. 170, 95th Cong., 2d Sess. 67, *reprinted in* 1978 *U.S. Code Cong. & Ad.News* 4216, 4283.

The interlocutory nature of the right to appeal under section 7 of CIPA exemplifies its importance to the prosecutor. Prosecutors lack authority to appeal adverse judgments absent express legislative approval. *Arizona v. Manypenny*, 451 U.S. 232, 245–46, 101 S.Ct. 1657, 1666, 68 L.Ed.2d 58 (1981). However, under 18 U.S.C. § 3731 a prosecutor can now take any appeal not prohibited by the Constitution, *see United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975), including interlocutory appeals from orders dismissing parts of an indictment, suppressing evidence, or returning seized property. The expansion of the prosecutor's ability to bring interlocutory appeals underscores the importance to the prosecution of obtaining proper pre-judgment rulings. With double jeopardy as a bar to post-acquittal appeals, *see Manypenny*, 451 U.S. at 246, 101 S.Ct. at 1666, prosecutors were granted authority to bring interlocutory appeals in order to minimize judicial errors that may affect the prosecution's outcome. The interlocutory appeal right under section 7(a) of CIPA, like the similar right under 18 U.S.C. § 3731, is thus an important prosecutorial device.

Independent counsel must be able to decide when and whether to use this device. The timing of an appeal may implicate prosecutorial concerns, including substantive and strategic decisions regarding the course of the prosecution, as well as the public interest in successful and efficient criminal law enforcement. Cases involving classified information can lead to numerous adverse CIPA rulings, from all of which section 7(a) of CIPA allows appeal. If the Attorney General possesses the section 7(a) power, he could control the prosecution directly by breaking off proceedings and appealing at will. The specter of such successive appeals might hamper the prosecution, making it difficult for independent counsel to coordinate and discharge his statutory obligations. Such a result would undermine the guarantee of the Ethics in Government Act that independent counsel prosecute with independence.

### III.

The Attorney General contends that CIPA grants him the exclusive power to bring an appeal under section 7(a). In national security cases prior to CIPA, the government was frequently forced to choose between the risks to national security posed by disclosure of classified information and jeopardy to the prosecution if the information was withheld. CIPA, the Attorney General emphasizes, is a unified structure designed to avoid this "disclose or dismiss" dilemma. In his view, the hearing and substitution powers of sections 6(a) and 6(c) of CIPA were meant to be employed in conjunction with the section 7(a) appeal power to allow the government the opportunity to exhaust all available avenues of compromise as to classified materials before filing an affidavit under section 6(e) that would prohibit their disclosure altogether and thereby jeopardize the prosecution. The Attorney General argues that without the section 7 power, he must either file a section 6(e) affidavit or do nothing, thus defeating CIPA's central purpose.

We agree with the Attorney General that CIPA envisions a single decisionmaker balancing the cost of national security disclosure against the cost of aborting a prosecution. But we cannot read CIPA in a vacuum. Instead, we must read it in conjunction with the Ethics in Government Act's transfer of all prosecutorial authority to independent counsel. We cannot adopt the Attorney General's interpretation of the CIPA scheme as one of unitary power when a coordinate statute has explicitly

vested many of the prosecutorial functions discussed in CIPA in an independent entity. When independent counsel is prosecutor, the Attorney General need not balance the threat of public disclosure against the threat of ending the prosecution, because the Ethics in Government Act removes from his purview the possibility that his actions may end the prosecution. In this case, then, the Attorney General's only responsibility under CIPA is protection of classified information. The course of the prosecution is strictly a matter for the prosecutor—here, independent counsel—to contemplate. Independent counsel may respond to the effects of the district court's adverse rulings—including any sanctions imposed as a result of the Attorney General's decision to file a section 6(e) affidavit prohibiting disclosure of classified information—by appealing when, if ever, he wants.

Our reading gives full effect to both the Ethics in Government Act and CIPA. We recognize that the right to an interlocutory appeal under section 7(a) of CIPA is "essential to the statutory scheme," S.Rep. No. 823, 96th Cong., 2d Sess. 10, *reprinted in* 1980 *U.S.Code Cong. & Ad.News* 4294, 4303. However, section 7(a) provides the same flexibility to avoid the "disclose or dismiss" dilemma even when exercised exclusively by independent counsel, because district court rulings denying substitutions for specific classified information under section 6(c) of CIPA can still be appealed prior to ultimate dismissal of the case. The only difference is that independent counsel, within his prosecutorial discretion, may wait to appeal after the Attorney General has first filed an affidavit under section 6(e) prohibiting disclosure. Nothing in CIPA prohibits such timing, for nothing in CIPA requires an appeal under section 7(a) to be taken before an affidavit under section 6(e) is filed.

Nor does anything in CIPA proscribe appellate review of district court substitution rulings after the filing of a section 6(e) affidavit; indeed, to suppose otherwise would produce a requirement of piecemeal appellate recourse that would undermine the flexibility that CIPA contemplates. Whether to pursue an immediate appeal challenging a particular substitution ruling, whether to seek further accommodation on substitutions with the district court, or whether to appeal simultaneously the district court's evidentiary rulings under section 6(c) and imposition of sanctions under section 6(e), all inhere in the exercise of prosecutorial discretion. If this discretion is denied, the prosecutorial powers explicitly granted to independent counsel by the Ethics in Government Act would be eviscerated. By contrast, the flexibility of the CIPA scheme would not be undermined by the timing of an appeal, inasmuch as the propriety of the denial of substituted versions of the evidence can be contested prior to their disclosure at trial in any event.

No matter how independent counsel exercises the section 7 right to appeal, an appellate ruling would chiefly implicate prosecutorial concerns. This is true even if independent counsel waits to appeal district court substitution rulings until after the Attorney General files a section 6(e) affidavit. If the appellate court then rules that the district court improperly rejected the substitutions, trial proceeds without either disclosure of the classified information or dismissal of charges. If it affirms the district court's substitution rulings, the prosecution may be limited or dismissed after the appellate court reviews the district court's sanctions. But these hazards, which affect only the prosecution, would have been contemplated and accounted for by independent counsel in deciding to delay appeal.

What is never affected by this interpretation of CIPA is the Attorney General's constitutionally-based power to protect information important to national security. *See Department of the Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 824, 98 L.Ed.2d 918 (1988). The Ethics in Government Act relieves the Attorney General only of prosecutorial and investigative functions. *See* 28 U.S.C.A. 594(a); *see also Morrison v. Olson,* 108 S.Ct. at 2608–09 (power transferred to independent counsel "does not include any authority to formulate policy for the Government or the Executive Branch, nor does it give [independent coun-

sel] any administrative duties outside of those necessary to operate her office"). The Act plainly does not affect the Attorney General's authority to protect information important to national security by filing a section 6(e) affidavit.[6] The constitutional concerns that would be raised if the power to protect national security information were vested in a prosecutor not fully accountable to the President therefore need not engage us, for as long as the Attorney General can file a section 6(e) affidavit prohibiting absolutely the disclosure of classified information by a criminal defendant, national security cannot be compromised.

Our holding that independent counsel has exclusive authority to bring this appeal is a narrow one. In reaching this result, we have had to decide that the appeal power conferred by section 7(a) of CIPA is essentially prosecutorial. Section 6 of CIPA, unlike section 7, grants to the Attorney General certain duties closely related to the protection of national security. The Attorney General can: order a relevancy hearing under section 6(a) of CIPA to be held in camera, 18 U.S.C.App. § 6(a); order a hearing on substitution proposals under section 6(c)(1) of CIPA to be held in camera, 18 U.S.C.App. § 6(c)(1); file an affidavit in connection with substitution proposals "certifying that disclosure of classified information would cause identifiable damage to the national security of the United States," 18 U.S.C.App. § 6(c)(2); and file an affidavit prohibiting the disclosure of clas-

sified information altogether, 18 U.S.C. App. § 6(e)(1).[7] Nothing in this decision should be construed to hold that duties more directly related than section 7(a) to the protection of information important to the national security have been taken from the Attorney General and delegated as prosecutorial functions under the Ethics in Government Act.

#### IV.

The appeal in this case is hereby dismissed, and the stay of trial proceedings is accordingly lifted.

DISMISSED.

---

6. The only reference to national security in the charter of authority for independent counsel is in section 594(a)(6) of the Ethics in Government Act. This provision has no applicability to a situation such as this one in which a criminal defendant is seeking to disclose publicly classified information. Instead, it contemplates the situation where the Executive Branch seeks to withhold from independent counsel evidence arguably relevant to the prosecution on grounds of national security and it empowers special counsel to apply for appropriate security clearances and to contest in court a claim of executive privilege. Here, the Executive Branch, rather than resisting requests for information from independent counsel, is seeking to exercise independent counsel's prosecutorial authority, a matter to which section 594(a)(6) does not speak.

7. While the Department of Justice contends that any attempt to ascribe significance to references in CIPA to the "Attorney General" as opposed to the "United States" would lead to the position that the Attorney General could only prepare and not file an affidavit, see 18 U.S.C.App. § 6, we think this an overly grudging perception of the Department's own powers. Nothing in the filing of an affidavit by the Attorney General under section 6 of CIPA trespasses on prosecutorial prerogatives or any power assigned to independent counsel under the Ethics in Government Act. Indeed, we are informed that the Acting Assistant Attorney General filed section 6(c) affidavits in this case.

