**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

STEVEN J. ROSEN; KEITH WEISSMAN,

*Defendants-Appellees.*

No. 08-4358

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, Senior District Judge.
(1:05-cr-00225-TSE-1)

Argued: October 29, 2008

Decided: February 24, 2009

Before KING, GREGORY, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Gregory and Judge Shedd joined.

## COUNSEL

**ARGUED**: Thomas P. Reilly, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Baruch Weiss, ARENT FOX, L.L.P., Washington, D.C.; Abbe David Lowell, MCDERMOTT, WILL & EMERY, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Chuck

Rosenberg, United States Attorney, James L. Trump, W. Neil Hammerstrom, Jr., David B. Goodhand, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Michael C. Martin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Erica E. Paulson, Roy L. Austin, Jr., MCDERMOTT, WILL & EMERY, L.L.P., Washington, D.C.; John N. Nassikas III, Kate B. Briscoe, ARENT FOX, L.L.P., Washington, D.C., for Appellees.

---

## OPINION

KING, Circuit Judge:

The grand jury in the Eastern District of Virginia charged the defendants — Steven J. Rosen, the Director of Foreign Policy Issues at the American Israeli Public Affairs Committee ("AIPAC"), and Keith Weissman, the Senior Middle East Analyst in AIPAC's Foreign Policy Issues Department — with violations of the Espionage Act, 18 U.S.C. § 793. The operative indictment, returned as a superseding indictment on August 4, 2005, asserts that between 1999 and 2004, the defendants obtained national defense information from various sources within the United States government[1] and unlawfully passed that information to other AIPAC staffers, foreign officials, and members of the news media.[2] In this interlocu-

---

[1] Lawrence Anthony Franklin, a former Department of Defense employee, was also indicted as a coconspirator in these proceedings. Franklin pleaded guilty to two counts of the indictment and, in January 2006, was sentenced to 151 months' imprisonment.

[2] Count One of the indictment charged the defendants with conspiracy to communicate national defense information, in contravention of 18 U.S.C. § 793(g). Count Three charged Rosen with aiding and abetting Franklin's disclosure of national defense information to Rosen, in violation of 18 U.S.C. §§ 793(d), 2. The remaining counts in the indictment do not name either Rosen or Weissman.

tory appeal, the government challenges the district court's pretrial evidentiary rulings on the handling at trial of classified information. The defendants have moved to dismiss the appeal for lack of jurisdiction. As explained below, we deny the motion to dismiss and affirm the challenged evidentiary rulings.

I.

The district court's evidentiary rulings were made pursuant to the Classified Information Procedures Act, 18 U.S.C. app. 3 §§ 1-16 ("CIPA").[3] As we have recognized, CIPA is "merely a procedural tool requiring a pretrial court ruling on the admissibility of classified information." *United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985). CIPA § 1(a) defines "[c]lassified information," in pertinent part, as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security."

As relevant here, if a defendant expects to disclose or cause the disclosure of classified information at trial or in a pretrial proceeding, he is required, pursuant to CIPA § 5(a), to notify the district court and the government of the potential disclosure. Under CIPA § 6(a), the government may then "request the court to conduct a hearing to make all determinations concerning the use, relevance, or admissibility of classified information" — a request that the court must fulfill.[4] If the court

---

[3]The various subsections of CIPA are referred to herein as "CIPA § ___."

[4]In assessing admissibility, the court must consider not just the relevance of the evidence, but also the applicability of any government privilege, such as military or state secrets. *See Smith*, 780 F.2d at 1107, 1110. Here, the government asserts a classified information privilege; such a privilege "must . . . give way when the information . . . 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'" *Id.* at 1107 (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)).

authorizes disclosure of classified information, the government may then move, under CIPA § 6(c)(1), that the court order, inter alia, "the substitution for such classified information of a summary of the specific classified information." The court must conduct a hearing on any CIPA § 6(c)(1) motion, and it "shall grant such a motion . . . if it finds that the . . . summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."[5] The government is entitled, pursuant to CIPA § 7, to pursue an interlocutory appeal from any ruling of the court "authorizing the disclosure of classified information." *See United States v. Fernandez*, 887 F.2d 465, 469-70 (4th Cir. 1989) (recognizing that CIPA § 7 allows appeals from adverse CIPA § 6(a) and (c)(1) rulings). Finally, CIPA § 5(a) prohibits a defendant from disclosing classified information until proper notice has been given, the government has been afforded "a reasonable opportunity to seek" a CIPA § 6 determination from the court, and the government's time to initiate a CIPA § 7 appeal from any such determination has expired.

Here, Rosen and Weissman gave notice to the district court and the government, pursuant to CIPA § 5(a), that they expected to disclose at trial a large volume of classified information. The government promptly moved, pursuant to CIPA § 6(a), for a hearing on the use, relevance, and admissibility of the classified information at trial. The court, after conducting such a CIPA hearing, determined that a substantial vol-

---

[5]Under CIPA § 6(c)(2), the government may "submit to the court an affidavit of the Attorney General certifying that disclosure of classified information would cause identifiable damage to the national security of the United States and explaining the basis for the classification of such information." If the court denies the government's CIPA § 6(c)(1) motion, and the government submits a CIPA § 6(c)(2) affidavit of the Attorney General, the court must, under CIPA § 6(e)(1), order that the defendant not disclose the classified information. In such circumstances, however, the court must also order, pursuant to CIPA § 6(e)(2), the dismissal of the indictment or some other appropriate action.

ume of the classified information was indeed relevant and admissible.

As a result of the district court's rulings, the government sought permission, pursuant to a motion filed under CIPA § 6(c)(1), to introduce substitutions for many of the classified documents that had been deemed relevant and admissible. The government proposed to create the substitutions by redacting and otherwise summarizing classified information in the original documents. During a CIPA hearing conducted over the course of twenty-two days in 2007 to address the government's § 6(c)(1) motion, the court ruled that, although some of the government's proposed redactions were acceptable, other such redactions would not afford the defendants the same opportunity to defend themselves as would the admission of the unredacted documents containing classified information. In some instances, the court concluded that less extensive redactions, or the use of replacements for particular names, places, or terms, would adequately protect the defendants' rights while simultaneously offering adequate protection for classified information. The court thus directed the parties to fashion substitutions for the classified documents in accordance with the oral rulings it made during the hearing. Thereafter, the court entered an order adopting the parties' agreed-to substitutions, over the government's objection. *See United States v. Rosen*, No. 05-cr-00225 (E.D. Va. Mar. 20, 2007) (under seal) (the "CIPA § 6 Order").

The government has timely noted this interlocutory appeal, pursuant to CIPA § 7, challenging the district court's CIPA § 6 Order with regard to two specific documents: the "FBI Report" and the "Israeli Briefing Document."[6] The defendants have moved to dismiss the appeal for lack of jurisdiction.

---

[6]In its reply brief in this appeal, the government also challenges the district court's CIPA § 6 Order with regard to several draft National Security Presidential Directives ("NSPDs"). The government did not challenge the court's NSPD rulings in its opening brief, however, only mentioning the NSPDs briefly in a footnote. We are unable to consider a claim raised for the first time by way of a reply brief. *See Yousefi v. INS*, 260 F.3d 318, 325 (4th Cir. 2001). Thus, the government has forfeited its challenge to the court's NSPD rulings.

## II.

In disposing of this appeal, we must first assess the defendants' motion to dismiss the appeal for lack of jurisdiction. In this regard, Rosen and Weissman contend that the government lacks authorization under CIPA § 7 to pursue such an interlocutory appeal for two reasons. First, the defendants assert that the government has failed to establish, as an essential predicate for this appeal, that the court-approved substitutions for the FBI Report and the Israeli Briefing Document contain classified information. Second, the defendants maintain that the government was required — but failed — to obtain the imprimatur of the heads of the agencies charged with responsibility for the classified information before noticing the appeal. We address these aspects of the defendants' CIPA § 7 jurisdictional contention in turn.

## A.

The first aspect of the defendants' jurisdictional contention is premised on their assertion that the government has failed to establish that the court-approved substitutions for the FBI Report and the Israeli Briefing Document contain classified information. As background, both the FBI Report and the Israeli Briefing Document were produced by the government during discovery. With respect to the FBI Report, the government contended that Weissman disclosed the Report's existence and disclosed that the report is **[REDACTED]**, and that the information disclosed by Weissman was classified. The government provided notice to the defendants that it intended to use the Report at trial to establish these contentions, even though there is no allegation that Weissman actually received the Report, or that he ever disclosed the Report itself. In response, the defendants provided notice that they, too, intended to use the Report at trial, seeking to show that the Report was not classified on the basis of the information Weissman disclosed; rather, the Report was classified to pro-

tect sensitive details regarding sources and methods, details that were neither known to nor disclosed by Weissman.

After the district court deemed the FBI Report to be relevant and admissible, the government sought to redact the information in the Report relating to sources and methods. In response, the defendants contended that such redactions would deprive them of their ability to put on their defense. Now that the district court, by its CIPA § 6 Order, has adopted the parties' agreed-to substitutions for the Report, the defendants argue that the substitutions may not contain classified information. As such, according to the defendants, the government should be required to go back through the appropriate classification procedures before pursuing this interlocutory appeal.

With respect to the Israeli Briefing Document, although the government produced the Document in discovery, it does not plan to introduce it at trial. The defendants, however, intend to use the Document to support their assertion that **[REDACTED]**, and that their disclosure of that information was accordingly not a violation of 18 U.S.C. § 793. The district court initially concluded that the Document was not relevant and, thus, was not admissible. On reconsideration, however, the court ruled that the Document was both relevant and admissible. The court then permitted the government to offer a redacted Document for use in evidence, but rejected the substantial redactions to the Document that the government proposed. Instead, the court adopted in its CIPA § 6 Order the parties' agreed-to substitution, which reveals the general nature of the information contained in the Document, while seeking to protect the sensitive information about sources and methods contained therein. As with the substitution for the FBI Report, the defendants now contend that the substitution for the Israeli Briefing Document may not contain classified information and, thus, cannot be the subject of a CIPA § 7 appeal.

Contrary to the defendants' assertion, the record establishes that both the FBI Report and the Israeli Briefing Document remain classified. Moreover, although the court-approved substitutions for the FBI Report and the Israeli Briefing Document do not contain some of the classified information the government sought to protect, CIPA does not mandate that court-approved substitutions go back through the statutory classification procedures to determine whether they would be classified in their new form. We are simply unwilling to read into CIPA a requirement that is not present under its plain terms, and thus undermine the government's right to pursue this interlocutory appeal. Because the court's evidentiary rulings with regard to the FBI Report and the Israeli Briefing Document fall within the ambit of CIPA, we possess CIPA § 7 jurisdiction to review those rulings on appeal.[7]

B.

The second aspect of the defendants' jurisdictional contention is based on their position that the government failed to satisfy the requirement that it obtain the imprimatur of the heads of the agencies charged with responsibility for the classified information — the Director of the FBI for the FBI Report and the Secretary of State for the Israeli Briefing Document. That is, the defendants maintain that the relevant agency heads must assert the classification privilege as a prerequisite to a CIPA § 7 interlocutory appeal. In support of this

---

[7]For the first time on appeal, the defendants contend that the original classification authority would now testify that the Israeli Briefing Document should not be considered classified in its unredacted form, notwithstanding the classification marks readily apparent at the top and bottom of each page thereof. The defendants support this contention with the affidavit of their counsel (first filed on appeal) regarding what the classification authority would say if he were to testify. The defendants failed to provide to the district court either counsel's affidavit or any affidavit from the classification authority himself. Because the defendants could have raised this claim in the district court and did not, it is not properly before us in this proceeding.

proposition, the defendants rely on a recent Second Circuit decision, *United States v. Aref*, 533 F.3d 72 (2d Cir. 2008). In *Aref*, the court held that the government's privilege against disclosure of classified information may only be asserted "through the 'head of the department which has control over the matter, after actual personal consideration by that officer.'" *Id.* at 80 (quoting *United States v. Reynolds*, 345 U.S. 1, 8 (1953)). Although the defendants readily concede that there is no similar requirement in our precedent, they urge us to adopt and apply such a legal principle in this case. As explained below, we decline their invitation to adopt such a rule.

As the defendants recognize, in the criminal context (as in *Aref*), a court must weigh the government's asserted privilege against a defendant's right to present evidence that is relevant to his defense or essential to a fair determination of the cause. In the civil context (as in *Reynolds*), where a defendant's liberty is not at stake, a court is entitled to require the government to meet a higher standard for determining whether the information has properly been deemed to be classified. Thus, although the *Reynolds* Court held the government to a high standard on the stakes at issue in that civil proceeding, it is not clear to us that the *Aref* court properly adopted and applied *Reynolds* in the criminal context. Our trepidation on adopting the rule in *Aref* is further reinforced by the absence in CIPA of any equivalent agency head requirement. In such circumstances, we conclude that the absence of a statement from the relevant agency heads invoking CIPA protection does not present a barrier to the exercise of our jurisdiction in this appeal. Thus, we deny the defendants' motion to dismiss this appeal for lack of jurisdiction.

III.

A.

Turning to the merits of this appeal, the government first argues that the district court's evidentiary rulings on the FBI

Report and the Israeli Briefing Document, as embodied in the CIPA § 6 Order, were predicated on a misunderstanding and misapplication of 18 U.S.C. § 793. Specifically, the government contends that, by a prior order of August 9, 2006, rejecting the defendants' motion to dismiss the § 793 charges against them on constitutional grounds, *see United States v. Rosen*, 445 F. Supp. 2d 602 (the "§ 793 Order"), the court interposed additional elements on the alleged § 793 offenses, in an effort to ensure that § 793 passed constitutional muster as applied to the defendants. According to the government, these additional elements were the reason the court later ruled, in the CIPA § 6 Order, that the documents in question were relevant and, thus, admissible.

Although we possess jurisdiction to review the district court's evidentiary rulings under CIPA, as articulated in the CIPA § 6 Order, the government's attempt to piggyback a pretrial review of the court's interpretation of § 793 is improper at this juncture. Indeed, by order of June 20, 2008, we dismissed as interlocutory the government's appeal of the court's § 793 Order, in which the court's interpretation of § 793 was articulated. Our dismissal of that appeal constitutes the law of the case, and we will not revisit it. *See United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (recognizing general rule that legal ruling is binding through all subsequent stages of proceeding) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)). Even if appellate review of the § 793 Order was not barred by the law of the case doctrine, moreover, the reasoning for our dismissal of the appeal of the § 793 Order continues to be persuasive: specifically, such an appeal is interlocutory, and must be dismissed as such, unless authorized by some exception to the finality rule. The only exception that could arguably apply and authorize such an interlocutory appeal is CIPA § 7, which relates only to classified information-related evidentiary rulings, not to interpretations of statutory offenses. Because CIPA § 7 does not, on its face, authorize a pretrial review of

the § 793 Order, this appeal is limited to the evidentiary rul-
ings made in the district court's CIPA § 6 Order.[8]

## B.

Finally, we review the district court's evidentiary rulings
with regard to the FBI Report and the Israeli Briefing Docu-
ment for abuse of discretion. *See United States v. Fernandez*,
913 F.2d 148, 154-55 (4th Cir. 1990). The court's determina-
tions regarding relevance and admissibility of evidence are
accorded great deference, even in the context of CIPA § 6(a),
and such decisions may only be overturned "under the most
extraordinary circumstances." *Id.* at 155 (internal quotation
marks omitted). "The abuse of discretion standard also applies
to the trial court's decision to reject a proposed substitution
under [CIPA] § 6(c)." *Id.*

The defendants contend that the Israeli Briefing Document
is relevant because **[REDACTED]**, and the Document is the
best evidence of **[REDACTED]** about the events described in
the Document. The district court initially concluded that the
Document was not relevant, but later reconsidered and revised
that ruling. It is far from certain that the Document is relevant
to show that the defendants **[REDACTED]**. The Document is
a **[REDACTED]**, a matter that could be proven by other
means, including the **[REDACTED]**. *See United States v.
Smith*, 780 F.2d 1102, 1108, 1110 (4th Cir. 1985). Neverthe-
less, we may not substitute our judgment for that of the trial
court, which has been immersed in these proceedings for

---

[8]Although we do not possess jurisdiction to review the § 793 Order at
this juncture, it is apparent that the district court worked tirelessly to bal-
ance the competing forces inherent in a prosecution involving classified
information, and that its efforts to protect the fair trial rights of the defen-
dants were not inappropriate. We are nevertheless concerned by the poten-
tial that the § 793 Order imposes an additional burden on the prosecution
not mandated by the governing statute. Section 793 must be applied
according to its provisions, as any other course could result in erroneous
evidentiary rulings or jury instructions.

many months and has far more familiarity with the matter than we do. *See United States v. Mason*, 52 F.3d 1286, 1289-90 (4th Cir. 1995); *Fernandez*, 913 F.2d at 154-55; *United States v. Tindle*, 808 F.2d 319, 327 n.6 (4th Cir. 1986). Moreover, at this stage of these proceedings, we are unable to definitively say that the Document will not prove to be relevant to the defense, although its relevance is not entirely clear at this point. Thus, we are constrained to conclude that the court did not abuse its discretion in deeming the Israeli Briefing Document — in the form of the court-approved substitution — to be relevant and admissible.

Furthermore, the district court did not err in concluding that the FBI Report is relevant to the defense, as the 18 U.S.C. § 793 offenses in the indictment are predicated in part on the disclosure of the Report's existence, and on Weissman's disclosure that the Report is **[REDACTED]**. The defendants sought to use in their defense the entire unredacted Report, in an effort to show that the information they disclosed was not the basis for the Report's classification. The government, on the other hand, sought to redact large portions of the Report, asserting that those portions were not relevant to the defense. In the face of these competing contentions, the court examined the Report and the proposed redactions in painstaking detail, and then determined that certain of the redactions were necessary while others would impair the defendants' ability to mount a proper defense. In making this assessment, the court enlisted the participation of the government and the defendants, and sought to fashion a substitution that would protect the defendants' rights, while simultaneously preventing the unnecessary disclosure of classified information. Although there may be other procedures by which this conflict could have been resolved, there was no abuse of discretion in the court's rulings on the FBI Report. *See Fernandez*, 913 F.2d at 154-55.

## IV.

Pursuant to the foregoing, we deny the defendants' motion to dismiss the appeal. However, we affirm the evidentiary rulings of the district court that are challenged by the government.[9]

*AFFIRMED*

---

[9]Finally, we also deny two remaining motions in this appeal, the defendants' request to file a surreply brief, and the motion of several non-parties to file an amicus brief.